Morning, Your Honors. Charles Fleischman appearing for the plaintiff and appellant, Mrs. Lenox. This case centers around the issue of whether or not there was substantial evidence to support the denial of benefits to Mrs. Lenox. To begin with, everybody agrees that she had the lupus and she had fibromyalgia. Her three examining and treating, I'm sorry, four examining and treating doctors all agree that she was totally disabled from any occupation. The only evidence that supports the denial is the opinion of Dr. Cho. And his opinion is suspect for a number of reasons and does not constitute substantial evidence. First of all, his opinion was that she could perform her own occupation. That opinion was rejected by the insurance company itself when they granted her benefits for the first two years under the own-occupation test. They used that same opinion then to deny her benefits for the any-occupation test, and it was an opinion that they had rejected, obviously, before. The opinion itself is at odds with all the other doctors' opinions, and the other doctors are all rheumatologists, and most of them, Dr. Selick and Dr. Kaplan, are rheumatologists. Dr. Bluestone is a rheumatologist. They all agree that she's totally disabled. Dr. Bluestone is a, was a defense doctor in a workers' compensation case who was not even, who has no, no, no reason at all to, to, to give her any type of favorable opinion. But it was his opinion beyond doubt that she was entitled to Social Security, that she was totally disabled, and that she cannot perform any job. Dr. Cho's opinion is based upon the fact that she was, she was, the reason that she, one of the reasons he gave for his opinion was that the reason she became disabled was because her own job lifting and traveling requirements made her, was the direct cause of her disability. But it ignores the fact that the other doctors that examined her and said that she was totally disabled saw her months and even over a, one of them saw her over a year after she had stopped working at the old job and was no longer involved in those activities. And it's not. Kennedy. Well, you're asking us to review the findings in the same manner the district court reviewed them and find that the district court was just dead wrong, right? Well, the district court was dead wrong in its findings of fact, yes. Yes. So that we, we are reviewing, we're going to ignore Dr. Cho's testimony and take the testimony of the other doctors as you would have us do, right? Yes. Okay. Now, by what standard do we do that? Well, this is a. Was the district court arbitrary and capricious or what? The district court made findings of fact that were not correct and they were, they were. He had some basis to make the findings he made, didn't he? No. Was it she? Excuse me. I don't know. No, it's he. Absolutely. No, no basis in fact at all. Dr. Choi was so far off the mark that he, the district court had to ignore it. Yes. Okay. Yes. That's really your case, isn't it? Other than you, you've submitted to us a Fourth Circuit case written by Judge Motz, which sets out the whole trail of standards, right? And you agree with those. Yes. Okay. Part two of that opinion is really the legal basis of your argument. Yes, pretty much. Yes. There is not substantial evidence. And I think what happened is, well, actually, the trial court's opinion came out before the Supreme Court's opinion in Black and Decker v. Nord. But insofar as Black and Decker v. Nord has anything to do with this case, I think the step opinion shows how it doesn't apply here, how the second half of the Nord opinion has been disregarded, and that is that plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating doctor, and they just ignored the treating doctor. They accepted the opinion of Dr. Choi. We know Dr. Choi, for example, gave restrictions, limitations and restrictions on Mrs. Lennox, and he's never met her, never examined her or anything. Now, we all know, because the Ninth Circuit, this Court has told us that, and that's in Walker v. American Home Insurance, that fibromyalgia is hard to prove. Most people with it are not disabled, but it's tough to figure out which ones are disabled. How does Dr. Choi, Cho, who never saw her, set restrictions on her? I mean, he agrees she's got fibromyalgia and she's got lupus. How does he set restrictions on her when he's never met her? How does he – all he's got is the reports of her treating and examining doctors, all four of whom found her to be totally disabled. His reasons that she worked until she became disabled, that was one of his reasons, and that reason has been rejected in virtually every time it's been raised in front of a court of appeals. Everybody who's disabled works until they stop working. So that's hardly a reason. It was also rejected, that reason was rejected in Hawkins v. First Unum, which I cite to the Court. He virtually ignores that she's got fibromyalgia. He points out continually – he notices that she's got fibromyalgia, but when he gives his reason for saying that she's not disabled, he says the lupus hasn't been active and the lupus – well, Dr. Kaplan told him in the phone conversation that it's not the lupus that's disabling her, it's the fibromyalgia. And he never dealt – Dr. Choi never dealt with that. To accept his opinion over the opinion of the other doctors was arbitrary and capricious on the part of the insurance company. And that's basically it. Do you want to reserve the remainder of your time? Yes. All right. Thank you. Thank you. David Weinman of Galvin-Helm for Defendant Continental. May I ask you a question about Dr. – what is it, Chiu? Chiu. I think it's Chiu. Who is he? He is in – he works for a company that's involved – that does medical record reviews. He's not – he's independent from the insurance company. How is he independent? What is – He's not an employee of the insurance company. He's not an employee, but he solely provides expert medical testimony on behalf of insurance companies. I don't know that, Your Honor. All right. Are you familiar with Judge Posner's opinion in Hawkins? Yes, I am. Judge Posner reviewed a similar opinion of Dr. Chiu and found it completely unsatisfactory because it did not take into account the opinions of the other doctors. It was based on things like, well, she worked in the past, which is not a legitimate basis, did not consider all the factors that were presented to him, and had not even seen the person who was claiming disability benefits. I'm aware – yeah, I've read the case, and it's a completely different case. We really don't know very much about the facts of that case at all other than what's reported. Well, we certainly know a lot about Dr. Chiu's unsatisfactory opinion in that case. In that case, the problem that the court had with the opinion – with Dr. Chiu's opinion was that he was pointing to the lack of objective medical evidence for a condition, fibromyalgia. Dr. Chiu, he's a rheumatologist and an internist. He's the specialist for these types of conditions. That – there's nothing like that going on in this case. He didn't find that – What's the basis for his opinion that Mrs. Lennox can perform sedentary, full-time sedentary and light-level type of work given all the diagnoses of her treating physicians and the physician working for the – on the opposite side in her workers' compensation – social security case and workers' compensation case that she can't do any of this? Well, I don't know that it – The flares of the lupus and the nature of her fibromyalgia, or I'm not sure I'm pronouncing that correctly, that they all said she cannot perform this. What is the basis for Dr. Chiu's opinion? Well, I don't – what these other doctors – no doctor other than Dr. Kaplan, the treating physician, said that Mrs. Lennox cannot perform alternative work, light sedentary work. The only physician as found by the trial court that said that was Dr. Kaplan. And Dr. Kaplan said this in a two-sentence letter written only after Dr. Chiu's analysis. What about in 2000 when Dr. Salek said that between her fibromyalgia and her lupus she was totally disabled? There's no specific comment. He's working in a different system. What I told – what I said to the Court was that no – as the trial court found no physician other than Dr. Kaplan said that Mrs. Lennox under our policy standard I understand the trial court found that, but the trial court could be wrong, correct? And if the trial court made incorrect factual findings, then wouldn't that make it an arbitrary and capricious decision? Well, I – I don't think the trial court made any clearly erroneous factual findings, which would be the standard. But it's not incorrect to say that the only treating – that the only physician – only treating physician, Dr. Kaplan, is the only one that said she can't perform the alternative work. The company paid the first two years of the claim. And then when the standards were – Because she – because the company decided she could not perform her own work, which was the very type of work that Dr. Chiu found she could perform. No. No, Your Honor. What – the reason that Dr. Chiu found that Lennox could not perform her own work was that there was a lot of lifting responsibilities, heavy lifting, heavy filing. That's what Dr. Chiu – Chiu – that Lennox could not do. Dr. Chiu always said that Lennox can perform a regular legal secretary, sedentary, light position. Her own OC, which was paid for two years, involved heavy lifting and heavy filing, 40-pound boxes, things like that. She was a girl Friday, her own – according to her employer. Her own occupation involved lifting duties that a regular legal secretary doesn't have. Once the standards switch to any occupation, Dr. Chiu's report indicates that she can perform the alternative work, the light sedentary work. The only physician that ever said that Lennox cannot perform the alternative work, the own OC work, was Dr. Kaplan. And Dr. Chiu had a telephone conference with Dr. Kaplan before he issued his report. The report was sent to Dr. Kaplan. The only thing that ever came back was a conclusory letter saying Lennox is totally disabled from everything. Since the briefing, the Ninth Circuit decided Jordan v. Metropolitan Life. I'm sure the Court is aware of it. It's 370F3-8689. Did you bring that case to our attention in a 28-day letter? That was an oversight. I did not bring it to the Court's attention. But it's precisely on point. It's a fibromyalgia case involving an independent medical record review. There's no independent medical examination. It's fibromyalgia. And it's basically exactly the same thing. And the Ninth Circuit held that based on the independent medical record review in that case, that the fibromyalgia was not disabling, that there was no abuse. But we would have to look at the facts of those cases, that case, and see what the doctors opined in that case. I'm sorry? We would have to look. I mean, I've got all these medical records. And I know you're saying that these doctors like Bluestone didn't say that she's totally disabled, but I'm reading their statements that they say she is. Your Honor, I'm not saying that. I would have to compare the case you're citing to me now, which, you know, obviously I haven't had a chance to look at since you didn't cite it before, to this. I'd have to see their records, see what those doctors said, right? Well, in the – for the Jordan case, and I think you can see the Ninth Circuit's reasoning and what they take out of the Court's records, I'm not telling the Court that no doctor said she wasn't totally disabled. What I'm saying is very specific. Well, didn't physicians hired by Continental give you that opinion? That she was totally disabled? From her own occupation. Yes. Yes. That's what Dr. Chu said, and that's why we paid her benefits for two years. But after two years, the standard in the insurance policy changes from not whether you can perform the occupation you were regularly performing when you went on claim, but to whether you can perform any occupation. The own occupation of the – You're saying the other physicians limited their opinions solely to the question of workman's compensation? That – exactly. They weren't giving opinions in the context of the standards of the insurance policy. But the opinion was totally disabled, was it not? That was – their words are totally disabled. That's right. But my point is – Isn't that exactly the application we're making here? No, not necessarily. The workers' time standards – So the district court was just free to ignore those opinions, give them no weight whatsoever? No. No. In accepting the opinion? Dr. Chu reviewed – no, Dr. Chu reviewed all those reports and considered them and issued his opinion. And the trial court – And it's contrary to those? I'm not – see, that's – I don't believe it's contrary to those. I think it's contrary to what Dr. Kaplan said. But if you look at the Jordan case, when you just get a little conclusory letter with no medical evidence in it or supporting it saying totally disabled from any occupation, it's not a credible report. That's what the Ninth Circuit said in Jordan. And I apologize, again, for the oversight in not – Well, if you want us to consider a case, you should really provide it to us. Perhaps after argument, you could put the site down on a slip of paper and give it to the clerk. Okay. The trial court reviewed everything, all the medical reports, Dr. Chu's report. And what happened in this case was the employer of Lennox was in an incredibly stressful period. The law firm ends up dissolving. Her medical condition is stable. There's a couple – there's a flare-up of lupus in 1990. There's a flare-up of lupus in 1998. Other than those flare-ups, the medical condition is stable. The fibromyalgia produces symptoms of myofascial pain. That's discussed in Dr. Chu's report. The fibromyalgia produces pain and fatigue. There were no other – there were no flare-ups. These conditions are stable. The thing that changed was she no longer had a job. Her employer went under. The disability claim is not made any time during the ten years after a lupus diagnosis. It's only made when there's no job to return to and the flare-up occurred because there was stressful downsizing and eventual collapse of the law firm going on. Those don't last forever. And that's what Dr. Chu was basing his opinion on. It's in his report. Which disease did Dr. Chu rely on? I think he relied on both. When he's talking about myofascial pain, which is in his reports, that's fibromyalgia. And when he's talking about pain and fatigue, those are the disabling symptoms that the fibromyalgia can produce. That's what would – Did he say that she had – that he took into account both diseases? His report – Which was the – His report could have been clearer. When he's talking about symptoms of myofascial pain and fatigue, those are the disabling or restrictive symptoms that would ensue from the fibromyalgia diagnosis. So he's reviewing that. He talks with Dr. Kaplan. Dr. Kaplan told him that she has – Lennox has lupus and Lennox has fibromyalgia. It's not ignored or disregarded. We're not – you can see references that Dr. Chu makes to she has a fibromyalgia diagnosis. He's a rheumatologist. He's the specialist for this field, in this field. To say that it was ignored or disregarded is incorrect. The report could have been clearer. All right. Thank you, counsel. Thank you, counsel. Okay. The counsel in the court were – in the trial court were wrong when they said that only Dr. Kaplan said she was totally disabled. Dr. Salek wrote, quote, she is totally disabled as well as being unable to compete in the open labor market as a result of a combination of her lupus and fibromyalgia. Dr. Bluestone wrote, this patient is indeed totally disabled by her natural disease in any case and certainly qualifies for Social Security disability, even though it might require an appeal to persuade the Social Security examiner that the lupus is indeed bad enough to cause life-stopping fatigue and headaches. Whether they said this in the workers' compensation context or not, it is the test for total disability under the plan, being totally disabled. And certainly if a person qualifies for Social Security disability, they've got to – that means there's no job for them in the entire national economy. They've got to be able to qualify for disability under this plan or this plan is meaningless. The test for the own occupation disability, the first two years, requires that the person be unable to work in their occupation not for their specific employer, but as the occupation is generally performed in the nation. And that is – and that can be found at excerpts of Record 24 in the final denial letter from CNA to the plaintiff where they say you have to be totally disabled from being a secretary throughout the country, not just for your own employer. So when counsel says that they gave her those benefits because Dr. Cho said that she was only disabled from her own occupation, he said that that's not true. I mean, the test is it's not from her specific occupation. It has to be from any secretarial occupation in the country. And Dr. Cho, what he wrote was, Ms. Lennox should be – this is what he wrote, and this is the opinion that they rejected, CNA. Ms. Lennox should be able to perform her duties as a legal secretary within the job description. And that's found at supplemental excerpts of Record 151. In other words, he was saying she can do the job that she was doing for her specific employer, and they rejected that opinion and they gave her the two years' benefits for disability under her own occupation, and then they took that same opinion and they used it to deny her benefits under the – any occupation. And so it seems to me that in rejecting the opinion on the one hand and then accepting it on the other, they're acting arbitrarily and capriciously. Kennedy. Counsel, if this case were reversed, is the district court in a position to fix fees and costs for the entire proceedings? Yes. Okay. I think there was one more point I wanted to make. You're just about out of time. Okay. Thank you. You have 14 seconds if you can remember the point. I can't remember what it was. All right. Thank you. Thank you very much, counsel. The case of Lennox v. Continental Casualty Company will be submitted. We will hear Nakauchi v. Allstate. Counsel, I just wanted to mention, and this is for all counsel, we – our clerk – our wonderful clerk staff weighs these cases for us, and sometimes they assign much longer time than is really needed for oral argument. So you don't need to take all your time. If you can make your points in shorter time, we would appreciate it. Thank you. Thank you, Your Honor.
judges: Beezer, Hall, Wardlaw